**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00760-CMA-CBS

JAMES ALLISON,

    Plaintiff,

v.

DIGITAL MANAGEMENT INCORPORATED,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

---

    This case arises out of claims made by Plaintiff James Allison against Defendant Digital Management, Inc. (DMI) for religious discrimination and retaliation under 42 U.S.C. § 2000e (Title VII), and for breach of implied contract under Colorado law. (Doc. # 20.) This matter is before the Court on Defendant's Motion to Dismiss the First Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. # 21.) Mr. Allison has filed his Response (Doc. # 23), and DMI has filed its Reply (Doc. # 25). For the reasons stated below, Defendant's motion to dismiss is granted as to the Title VII claims. The Court declines to exercise supplemental jurisdiction over Mr. Allison's state law claim.

**I. BACKGROUND**

    Mr. Allison worked as a contractor for the Mine Safety and Health Administration (MSHA) in various roles and under various subcontractors for 17 years, from approximately 1995 to 2012. (Doc. # 20 at 3.) His positions included IT helpdesk

support, software development, and software testing for MSHA. (*Id.*) At different times throughout his career, Mr. Allison was commended for his performance, work ethic, and attitude. (*Id.*) DMI is a government contractor that provides information technology services to MSHA under a long-term contract that allows DMI to place several full-time employees on-site at MSHA's Denver location. (Doc. # 21 at 2.)

From 2006 to 2011, Mr. Allison worked for MSHA as a subcontractor for DMI. He became an employee of DMI in October 2011 and continued to do work for MSHA in this role. (*Id.* at 3–4.) During the approximately five months that Mr. Allison worked for DMI as its employee, his immediate supervisor was James Hartrich. (*Id.* at 4.)

Mr. Allison was a devout evangelical Christian who was very open about his faith, and had a number of scripture passages posted on the walls of his office. (*Id.*) Mr. Hartrich shared Mr. Allison's interests, and they had several conversations discussing religion during the course of Mr. Allison's employment. (*Id.*) Mr. Hartrich encouraged such discussions, and recommended that Mr. Allison read a particular spiritual book. (*Id.*) Both Mr. Allison and Mr. Hartrich also used the website BibleGateway.com to look up scripture passages online. (*Id.*)

Sometime in early February 2012, Mr. Allison was in a team meeting at which Mr. Hartrich was also present. (*Id.*) At the end of the meeting, Mr. Allison noted that the clock on the wall had stopped and that his cell phone had also stopped working that morning. (*Id.*) He remarked to Mr. Hartrich that the situation reminded him of a story in the Bible in which time stopped and the sun stood still. (*Id.* at 5.) Though Mr. Allison was unable to recall the exact scripture passage where this event was discussed, his remark prompted a brief discussion of the story. (*Id.*) Approximately two weeks later,

Mr. Allison found a printout of the scripture passage discussed at the meeting, and left it on Mr. Hartrich's chair. (*Id.*) Assuming Mr. Hartrich would understand the reference, Mr. Allison left no note explaining that the printout was from him. (*Id.*)

When Mr. Hartrich discovered the scripture placed anonymously on his chair, he became nervous because the scripture referenced people dying. (Doc. # 20-3.) He subsequently asked a supervisor, Pauline Gibson, if she had placed the scripture on his desk and stated that the anonymous scripture was "spooky." (*Id.*) Ms. Gibson reported the incident to Carrie Arrendale, chief of MSHA's Lakewood office, who then informed Federal Protective Services pursuant to protocol. (*Id.*) The matter was escalated to the Department of Homeland Security, which investigated over the holiday weekend. (Doc. # 21 at 3.) Upon reviewing security camera footage, MSHA and DMI became aware that Mr. Allison had left the scripture on Mr. Hartrich's desk. (Doc. # 20 at 7.) Because MSHA management viewed the incident as a threat, Joe Inqui, Executive Vice President of DMI's Civilian Operations, told Mr. Allison that he was being terminated (*Id.* at 7–8) "at the customer's request and in accordance with DMI's zero tolerance policy toward threatening behavior" (Doc. # 20-1 at 10). Mr. Allison had no history of violent or threatening behavior. (*Id.* at 4.)

On September 4, 2012, Mr. Allison filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) claiming he was terminated as a result of religious discrimination. (Doc. # 20-1). On December 14, 2012, the EEOC dismissed Mr. Allison's charge and issued a right to sue letter. (*Id.*) Mr. Allison then filed this suit in March 2013. (Doc. # 21 at 4.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted; alterations incorporated)).

Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted; alterations incorporated).

Thus, the burden is on Mr. Allison to "nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Plausibility refers to refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation marks and citations omitted).

The purpose of this pleading requirement is two-fold: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks and citations omitted).[1]

### III. DISCUSSION

Under Title VII, it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Title VII also makes it unlawful for an employer to retaliate against an employee because she has opposed any practice made an unlawful employment practice by this subchapter." *Khalik*, 671 F.3d at 1192 (*citing* 42 U.S.C. § 2000e–3(a)).

Where there is no direct evidence of discrimination or retaliation, as is the case here, a plaintiff can establish a Title VII violation by following the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

---

[1] Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice." *Id.* In this case, Plaintiff submitted an affidavit as an attachment to his response to DMI's motion. (*See* Doc. # 23-1.) DMI has alleged that Plaintiff cannot rely on these documents in contesting the Motion to Dismiss. (Doc. # 25 at 1-2.) It is unnecessary for the Court to determine whether this affidavit fits one of the above exceptions because Plaintiff does not meet his burden even if the Court considers this affidavit as a part of Mr. Allison's initial allegations.

Under this familiar framework, the plaintiff must first establish a *prima facie* case of discrimination or retaliation. The defendant may then provide a legitimate, non-discriminatory or non-retaliatory rationale for the adverse employment action. If the defendant meets its burden under the second step, the plaintiff then has the burden to show that the defendant's proffered rationale is pretextual. *See, e.g.*, *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013).

## A.  TITLE VII RELIGIOUS DISCRIMINATION CLAIM

To establish a *prima facie* case of discrimination, Mr. Allison must demonstrate that: "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (internal quotation marks and citations omitted). The third prong is the critical inquiry in any religious discrimination case—a plaintiff must demonstrate "that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Conroy*, 707 F.3d at 1171. "Plaintiffs can establish evidence of the third prong in various ways, such as actions or remarks made by decisionmakers, preferential treatment given to employees outside the protected class, or more generally, upon the timing or sequence of events leading to plaintiff's termination." *Barlow*, 703 F.3d at 505. While Plaintiff need not allege all facts to support a *prima facie* case, the claims in his complaint must be supported by sufficient

facts so as to make his claim plausible and entitle him to relief. *Twombly,* 550 U.S. at 555.[2]

Mr. Allison has not met the burden to provide enough facts to substantiate his claim that "he was terminated under circumstances giving rise to an inference of discrimination." To be sure, in his complaint and in briefing before this court Mr. Allison does emphasize an undisputed fact: that he was terminated shortly after he placed a scriptural passage on the desk of a supervisor. But he fails to explain in any detail how the decision to terminate was plausibly caused by anti-religious animus.

In particular, Mr. Allison has not pointed to any specific discriminatory remarks made by DMI management or to any instances in which employees outside his protected class were given preferential treatment. Rather, he vaguely references "conflicts" with supervisors stemming from his "religious and ethical beliefs," (Doc. # 20 at 8) or "growing hostility" with DMI and MSHA senior management. (*Id.* at 9). *Cf. Bagwell v. Safeway Denver Milk Plant*, No. 11-CV-00162-WYD-KMT, 2011 WL 2144632, at *5 (D. Colo. May 12, 2011) ("In *Twombly*, the Court was particularly critical

---

[2] DMI suggests that Mr. Allison must establish a *prima facie* case of discrimination to avoid a motion to dismiss. (Doc. # 21 at 6-8.) DMI is incorrect. The Tenth Circuit recently dealt with this issue in *Khalik* and held that Plaintiffs need not prove a *prima facie* case to survive a motion to dismiss; however, discussing the elements of the *prima facie* case is helpful in determining whether plaintiffs have stated a plausible claim. *Khalik*, 671 F.3d at 1192. While this standard does not require Mr. Allison to establish a *prima facie* case of each claim in his complaint, "the elements of each alleged cause of action help to determine whether [Mr. Allison] has set forth a plausible claim." *Khalik*, 671 F.3d at 1192. Therefore, although Mr. Allison need not allege all detailed facts necessary to carry his burden, this Court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007).

of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies.").

Similarly, Mr. Allison alleges that "one of Plaintiff's supervisors, Pauline Gibson, was known . . . to have a strong dislike of Christianity," and was "instrumental in securing Plaintiff's termination." (Doc # 20 at 9.) Yet Mr. Allison in no way substantiates this accusation. Indeed, he never even explains who was actually responsible for his termination, let alone how Ms. Gibson played a role in his termination, or even how Ms. Gibson manifested her anti-Christian animus.[3]

In sum, Mr. Allison's "naked assertions" are "devoid of further factual enhancement" and therefore insufficient to withstand a 12(b)(6) Motion to Dismiss. *Ashcroft*, 556 U.S. at 678. The complaint does not place DMI on notice of its alleged misconduct such that the business could prepare an appropriate defense: indeed, on the assertions in this complaint, DMI would be left guessing as to when and how exactly over the course of Mr. Allison's long-time association with the company it began to engage in the type of discrimination Mr. Allison alleges in the complaint. Further, to allow Mr. Allison to proceed to discovery with such threadbare accusations would impose an inordinate cost on DMI to defend what is at present a groundless claim. *Cf. Collins*, 656 F.3d at 1214.

---

[3] In discussing Ms. Gibson's alleged hostility, Mr. Allison also appears to allege a failure to promote claim. (*See* Doc. # 20 at 9.) DMI argues that this claim is barred because Mr. Allison did not raise this claim to the EEOC (Doc. # 21 at 5) and, therefore, failed to exhaust available administrative remedies. *See Annett v. Univ. of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004) ("We lack jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge."). Mr. Allison seems to concede that the claim is unexhausted. (*See* Doc. # 23 at 6.) Even if the Court were to consider Mr. Allison's failure to promote claim, the few facts alleged in its support are so conclusory that the claim fails under *Iqbal*'s pleading requirements.

### B.     TITLE VII RETALIATION CLAIM

Mr. Allison's complaint also does not include factual allegations sufficient to state a claim for retaliation under Title VII.

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) his protected activity was a but-for cause of the alleged adverse action by the employer. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Mr. Allison has not supplied sufficient factual allegations in his complaint to meet this standard.  First, it is unclear how exactly Mr. Allison engaged in a protected activity. Mr. Allison states generally that he opposed alleged workplace discrimination against his Jewish friend, Steve Rotenberg, by "supporting" him in the several union grievances and by being "willing to serve as a witness in related proceedings if called upon."  (Doc. # 20 at 13.)  Yet the complaint and supporting documentation is devoid of explanations about: (1) the content of these union grievances; (2) the specific manner in which Mr. Rotenberg was discriminated against on the basis of his religion; (3) how Mr. Allison manifested his opposition to this discrimination, or (4) how his opposition to the unlawful discrimination was the "but for" [4] cause of his termination.  Due to the utter lack of specific allegations as to the retaliation claim, Mr. Allison fails to satisfy Rule 8.

---

[4]  Mr. Allison appears to misapprehend the proper legal standard to allege a Title VII retaliation claim.  Mr. Allison asserts only that his "termination was motivated at least in part by retaliation" (Doc. # 20 at 14) or that the desire to retaliate was "a contributing factor" to the decision to terminate.  (Doc. # 23 at 12).  As noted above, under the Supreme Court's recent decision in *Nassar*, the desire to retaliate must be the "but for" cause—as opposed to merely a motivating factor behind —the decision to terminate.  *See, e.g.*, *Nassar*, 133 S. Ct. at 2525 ("It is thus textbook tort law that an action is not regarded as a cause of an event if the particular event would have occurred without it.").

### C.     BREACH OF IMPLIED CONTRACT CLAIM

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, a federal court may decline to exercise supplemental jurisdiction over an otherwise related claim under subsection (a) when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Indeed, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation omitted); *see also Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) ("[T]he most common response to pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice"); *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) ("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.").

Because there is no compelling reason why the Court should retain jurisdiction of the state law claim, and in light of the foregoing authorities, the Court declines to exercise supplemental jurisdiction over Mr. Allison's remaining state law claim and thus, dismisses the claim without prejudice.

### IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion to Dismiss First Amended Complaint (Doc. # 21) is GRANTED WITHOUT PREJUDICE as to both

Mr. Allison's Title VII claims and his state-law breach of implied contract claim.  It is

FURTHER ORDERED that this case is DISMISSED.

DATED:  October __31__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge